This, I suspect, is Mr. Gorman. This is the Christopher who Your Honor referred to earlier, Your Honor. Two minutes. Two minutes for a vote. Your previous argument was very good. Yes, you did an excellent job both times. All right, counsel, you may proceed. Christopher Gorman, Abrams Fensterman, LLP, for the appellant. May it please the court. Your Honors, this appeal presents two fundamental, but I think very basic, issues about real property law in New York. The first issue is extremely basic, and that is, what is a mortgage? And that's something that we all learned in our first year of law school. A mortgage is— I learned it in my first year of having an apartment. Fair enough, Your Honor. A mortgage is collateral for a loan that is given by a lender. So the loan is given by the lender. But what the borrower and what the landowner gives back, gives back to the lender, is the mortgage. So the mortgage is the landowner permitting the lender to record its mortgage against the property. That mortgage is a written instrument. That mortgage controls. Okay? Now, the second fundamental question that is raised by this appeal, again, pertaining to New York real property law, is, can a third party who is a stranger to that mortgage— Well, is it a stranger if it's the title insurance company who's been contracted? Are you talking about the company that came in and filed the correction six months later? I am, Judge. How are they a stranger? There's a difference—you're saying a stranger to the mortgage if you're simply saying this is not a person or party whose signature appears. Okay. But how is the title insurance company contracted for this purpose a stranger to the mortgage? Sure. So my response to that is twofold, Your Honor. The title insurance company is not a party to the mortgage. They do not sign the mortgage, as Your Honor pointed out. In addition, we see in the briefs that the lender is talking about the authority it gave to the title insurance company. My response to that is who cares? The lender can give the title insurance company whatever authority it wants, but the title insurance company can only act in one way, and that is in accordance with the law. They cannot make up the rules as they go along. And so the second fundamental principle that is at issue here is can a third party to a mortgage—not a party—go into the land records and file documents that affect a mortgage that are not subscribed to by the mortgagor? That is undisputed. The mortgagor does not sign that correction mortgage. And the answer to that question is a resounding no. And by that you mean there's a case that you're relying on? Your Honor, what we are relying on are the statutory remedies afforded to lenders under those circumstances and the terms of the mortgage. So what's the statutory remedy that's available to the title insurance company? It's an action to reform the mortgage, and there's a six-year statute of limitations for that. And as Your Honor pointed out, very quickly the title insurance company realized there was a problem here, very quickly, within a matter of months after the mortgage was recorded. The remedy for the title—the statutory remedy for the lender in the title insurance company was not to run off and file an unsubscribed document in the public records. The remedy—one of the remedies—I'm going to get to the second remedy in a moment. One of the remedies for the title insurance company was to commence an action to reform the mortgage. Because once that document that shouldn't be recorded is recorded, one of the only ways that that can be corrected is by judicial fiat. You need a court order. Now, the second way—and again, this is pointed out by the lender in its papers—is most mortgages, and in this instance there is language to that effect. In most mortgages, the borrower says to the lender, if there's a problem here, I'll cooperate with you. We'll correct those problems. There is nothing in the record here to suggest that before the title company went and recorded a correction mortgage in the land records that it approached the borrower and said, hey, we need your cooperation. Something's not right here. Now, there's zero to that effect. And then if in that circumstance the borrower, the landowner who gives the mortgage, does not consent, in that circumstance there is another judicial remedy, and that is for the lender to go to court to compel compliance on the part of the borrower with his or her obligation to cooperate under the loan documents. So there are ways to do this. The lender is not left with no remedies. One way to do it is to get the numbers right on the original papers, too. That would be extremely helpful, Your Honor. That would be extremely helpful. It seems to me you're categorizing some additional mistakes, which may be so. Your Honor, what I'm doing is I'm explaining, as this Court is very well aware, there were other avenues available here to do this, to quote, unquote, correct this mortgage. Which timing button now has run on those? The timing button has run. And I think it's critical. I think it's absolutely critical how quickly that correction mortgage gets filed after it is first recorded. It's within a matter of months. So that title insurance company knows there's a problem. And it has five and a half years, five and a half years within the statute of limitations, to commence an action to reform the mortgage after it records this improper correction mortgage. And it doesn't do so. All right, let's assume you're right about all of that for the sake of argument. How is your client a bona fide purchaser without notice of this? I mean, it seems to me the pendency notice was filed. There was plenty of notice out there about this encumbrance. Sure. So first and foremost, okay, the distinction, unfortunately, was not drawn by the district court. This is not a dispute between a mortgagor and a mortgagee. This is a dispute between a mortgagee and a third-party purchaser. And the rules are different. It's the meets the eye test. It's the mortgage, as Your Honor points out, that controls. And that mortgage very clearly in the description of the property identifies Unit 23B. So that's the only document of which the third-party purchaser has any duty to be aware. The pendency notice has no effect. So I'll address the pendency. In this case, Your Honor, that notice of pendency, I think the lender has to be careful what it wishes for, has to be very careful. That notice of pendency pertains to two dismissed foreclosure actions. That notice of pendency pertains to an action down the street in state court where a state court judge ruled that mortgage null and void and canceled. So that notice of pendency is not a good fact for the lender because those cases, okay, although the notice of pendency cannot correct recording errors. It can put the world on notice that the lender is taking steps with respect to its improperly recorded mortgage, but it cannot correct recording errors. I see that my time is up, so if there are any further questions. I'm just wondering, 23B, the apartment that he didn't own, does 23B, that apartment, have any role in the actual facts of this case? I mean, do we know who owned it? Do we know how it got there? Do we know how the confusion arose? Do we know anything about it? No, Your Honor, and I think that's a great point. Where did those handwritten notations in the mortgage come from? This is summary judgment. We're not here after a trial. This is summary judgment. Where did those notations come from? Unfortunately, I can't answer your questions, but I think the fact that I can't counsels in favor of reversing the district court's order, particularly on a motion for summary judgment. If there are no further questions, I'll save my two minutes for rebuttal. Thank you, counsel. We'll hear from Mr. Truitt. Good morning. May it please the Court. James Truitt for Appalied Deutsche Bank as an indentured trustee. First, to speak to Your Honor's question moments ago, Unit 23B has, other than being handwritten into the mortgage, is not in play here with the facts. Most importantly, this borrower never owned any interest in 23B. It only owned 49D. I think that's telling. The appellants claim that it's brief that the mortgage unambiguously encumbered Unit 23B is demonstrably false. Although, admittedly, the mortgage references 23B in two places, it also references the correct unit, the unit that the borrower owned at the time, Unit 49D, in seven places. The handwritten change on page three of the main form mortgage, crossing out 49D and writing in 23B, is not accompanied by a signature from the borrower that would indicate his assent or even knowledge of that change. The Schedule A description of the property, the other place that 23B is mentioned, that's attached to the mortgage is not signed or initialed by anyone. It never is. In the seven places where Unit 49D appears in the mortgage, each of those pages are either signed or initialed by the borrower. Given the conflicting references to the two different units throughout the mortgage, the lower court properly considered parole evidence, which overwhelmingly determined or established, rather, that the 49D was the property that the parties intended to encumber and, in fact, did encumber. That parole evidence included a note itself referencing only 49D. Twenty-two additional loan-related documents at the borrower signed, all pointing to Unit 49D, and nothing pointing to Unit 23B. We pointed this out in the motion practice below. The appellant was unable to come up with any parole evidence whatsoever suggesting that 23B was the intended mortgage. It's also undisputed on the intended property, rather. It's also undisputed on this record that the borrower never owned any interest in 23B, yet it owned 49D at the time. Given the overwhelming evidence indicating the parties truly intended to encumber 49D, the lower court properly held that that's, in fact, what the mortgage encumbers. To the BFP argument, appellant's argument that it's somehow a BFP fails as a matter of law, and it's not a close call. In New York, to be a bona fide purchaser for value, one must acquire its interest in the subject real estate without notice, actual or constructive, of any other party's competing claim to that property. You must also pay valuable consideration, must also win the race to the courthouse to record. Kind of a three-pronged test. This appellant did none of those things. In the land records indexed against this property at the time the appellant purchased in 2020 was the mortgage with the various references to the two different units, including 49D, already discussed. In addition, there was at least two tax affidavits that the lender had filed indicating its mortgage against 49D. There was the assignment from New Century into this lender indicating that it was assigning the mortgage against unit 49D to this lender. And perhaps most compelling, the notice of penancy that Your Honor asked about. That was in place at the time this appellant purchased the property. And in fact, when the appellant purchased in late 2020, the January 2020, so 11 months earlier, order in the state court action, the notice of penancy pointed to, was also part of the court's docket. This appellant was on notice of that order as well. In that order, the borrower himself challenged the validity of the correction mortgage. Would you remind me why we're doing this here? I mean, what's the basis for jurisdiction? Diversity. Diversity. Diversity, Judge. In that 2020 order issued by the state court, the borrower made some of the very same arguments this appellant makes now, attacking the validity and the enforceability of the correction mortgage. And the state court rejected those arguments and held expressly that the two parties intended to encumber and in fact did encumber unit 49D. Appellant was on notice of that. It was not an already dismissed foreclosure action at that time. It was an existing then pending foreclosure action where the lender was seeking to enforce its mortgage. Given the constructive notice that this appellant was on, it can never be a BFP. It also fails in the other two prongs. Didn't pay valuable consideration. Paid nominal consideration. Paid $25,000 for a property worth a million. I think we all know why. It also lost the race to the recording office. Deutsche Bank's mortgage was recorded first. There's no other questions. In conclusion, this appellant can never be a bona fide purchaser. It knew exactly what it was getting into when it purchased this million dollar property for $25,000. It was purchasing a property that was the subject of a foreclosure action by a lender with a recorded interest against the property. In addition, as three other courts have already found on the issue of the borrower and the lender's original intent in executing the mortgage documents, I think it's very clear that they intended to encumber 49D. And for those reasons, we ask that the court affirm the lower court's order in all respects. All right. Thank you, counsel. Thank you. And Mr. Gorman, we'll hear from you in rebuttal. I want to briefly address just two points here. The bona fide purchaser for value thing, he purchased at an auction. The Court of Appeals has held, and it's cited in our brief, that where that happens, you're a bona fide purchaser for value. Also, I think it's – Because it was at an auction, that's all that's sufficient? Yes. We cite a Court of Appeals case, $500 paid for a property, bona fide purchaser for value. And in all respects, in other words, not requiring any due diligence of leave. The only due diligence that's required is what is of – what is a matter of public record, right? That's it. Well, yes. And the corrected mortgage, which you believe is of no effect, was of record. The correction – an invalid correction mortgage, yes, which I think gets – it actually gets me right to my second point. Great. That I wanted to bring up in rebuttal, which is the public policy implications of this case for New York real property law cannot be lost on this venerable court, okay? Because we cannot – we refer to it in our brief, the wild west. Who now can go in and fix public records? Can anybody go in and fix public records? Whether it's ascribed to by a borrower or not, can the lender go in and fix public records? Worse yet, can borrowers – worse yet for the lending industry, can borrowers go in unilaterally and change public records? Let's change the facts of this case. What if it's the borrower that files the correction mortgage? What if the borrower says, after this mortgage is recorded – I'm using a different set of facts. Yes, lender, I extended three parcels of land to you for your collateral, but I only meant to extend two. So I'm going to go in on my own and start filing documents in the public records that say, I only meant two. And those are supposed to be binding on third-party purchasers? Those are supposed to be binding on relations between a mortgageor and a mortgagee? The Recording Act is meant for certainty. It is meant for clarity. And this would open up the floodgates and, I fear, create what we said in our brief, which is very much a Wild West atmosphere in the clerk's office. If there are no further questions, we will stand on our briefing. All right. Thank you, counsel. Thank you.